IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ANA LEVITA, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 4:21-CV-00968-CAN |
| | § | |
| COMMISSIONER, SSA, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ana Levita brings this appeal for judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. § 405(g), denying her claim for benefits. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court finds the Commissioner's decision is **REMANDED**.

## RELEVANT BACKGROUND

On May 22, 2020, Plaintiff Ana Levita ("Plaintiff") protectively filed an application for disability insurance benefits under Title II ("Title II") of the Social Security Act [TR 325, 279]. Plaintiff alleged an onset of disability date of January 31, 2020 [TR 326]. Plaintiff was born on June 7, 1964 [TR 325] and was considered an individual of "advanced age," for the duration of her claim. *See* 20 C.F.R. § 404.1563. Plaintiff has a college degree [TR 299] and her Disability Report reflects the following past relevant work: Director, Nursing Services, February 1, 2006 to January 2020, SVP 8 and Nurse, General Duty, August 1, 1999 to February 1, 2006, SVP 7 [TR 336-337].

On August 28, 2020, the claim was initially denied [TR 325-338], and again upon reconsideration on October 20, 2020 [TR 341-354]. Plaintiff requested an administrative hearing

("Hearing"), which was held May 5, 2021, before an Administrative Law Judge ("ALJ") [TR 297-324]. At Hearing, Plaintiff and Holly Jule, a vocational expert (hereinafter referred to as "VE") testified [TR 297-324]. Relevant to this appeal, are the following exchanges between the ALJ, the VE, and Plaintiff's attorney representative at Hearing:

| | |
|---|---|
| ALJ: | Okay. Now, would there be administrators, or I guess even managers or department heads in other industries that she would've gotten all the skills necessary to -- to do those jobs? Because you can go to other industries because it's managerial work, according to our rules. sedentary. I think you even said some of 'em were |
| VE: | Yes, sir, but they're actually some that are sedentary within the medical realm, and that's what I would start with, Judge. |
| ALJ: | Okay. What -- what were those jobs? |
| VE: | Okay. |
| ALJ: | Also, the limitation would be – it's gotta be done, you know, in a climate-controlled environment. She's got arthritis, so, she can't be exposed to heat or cold or dampness, and the best way to do that would be limit it to indoor climate-controlled environment and also limit handling and fingering to frequent, and if there are jobs with occasional, give me those first. |
| VE: | Yes, sir. Okay. The first one would be a director, nurses registry. This is DOT 187.167-034. This is a sedentary occupation, SVP6. |
| ALJ: | That's a directory of nursing? |
| VE: | Nurses registry. |
| ALJ: | And how many -- |
| VE: | This is 30,000 U.S. jobs. |
| ALJ: | Okay. And would that be occasional handling and fingering or frequent? |
| VE: | Yes, sir, occasional. |
| ALJ: | Oh. Okay. Okay. Any other jobs? |
| VE: | Yes, sir. We have a director – well, let me go – let me give you this one. This is a nurse consultant. This is DOT 075.127-014. This is a sedentary occupation, SVP7. And this is -- |
| ALJ: | This is director of nursing services? |
| VE: | No, no, no, this is nurse consultant. |
| ALJ: | Oh. Okay. |
| VE: | And there's 74,000 in the U.S. |
| ALJ: | And a third example? |
| VE: | Yes, sir. We have a director, outpatient services. This is DOT 187.117-058. This is also a sedentary occupation. This one is SVP8, and there are 43,000 in the U.S. |
| ALJ: | Okay. Now, explain the -- the skills required of each job and explain how those skills transfer from this claimant's job as a COO. |

| | |
|---|---|
| VE: | Yes, sir. Yes, sir. We have administration, hiring/firing, recruiting, referrals, nurse referrals, program management -- just directing and coordinating general operations, administering, planning, establishing policy. |
| ALJ: | And she's learned all those skills doing her job as a COO? |
| VE: | Yes, sir. |

[TR 317-319]

….

| | |
|---|---|
| Attorney: | So, I -- I -- well, first off, these skills that you've testified to, could she use them with no more than any, you know, minimal adjustment? She's over age 55. |
| VE: | Well, I would -- let's – let's take those individually, because even though they're in the -- in the healthcare industry, for them, it's the more, you know, work field than industry. I would say there would be probably more than minimal adjustment required -- vocational adjustment required to the    for the nurse consultant. For the other two, I -- and that's a 7. I -- I would say for the director, outpatient services, since that's a 8, I – I—I think that would still remain, and then, the nurses registry director – would remain. Does that make sense? |
| Attorney: | Okay. |
| VE: | I just – I had to treat them individually, yeah. |
| Attorney: | Well, okay. So, why would those two remain, but the nurse consultant would not remain? |
| VE: | The nurse consultant is a little bit more – it's – it's not as much as a director capacity. It's not those -- those -- those very, more generalized transferrable skills like hiring and firing, administration, those kinds of things. The nurse consulting would be more -- using more the program management policy, establishment policies and procedures, things like that. So, it just uses different -- a different set of those skills. It doesn't use all of them. |
| Attorney: | But -- but your testimony is that it would not take any more than minimal adjustment in terms of processes and -- you know, learning everything, vocationally? |
| VE: | No, I -- I believe I said it -- it -- it would. |
| Attorney: | Okay. And for only the nurse consultant or for |
| VE: | Yes. |
| Attorney: | the director |
| VE: | only for the -- |
| Attorney: | Okay. |

[TR 317-320].

ORDER – Page 3

On June 18, 2021, the ALJ issued an unfavorable decision [TR 276-288]. After hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluation [TR 276-288]:[1] The ALJ concluded Plaintiff met the insured status requirements through December 31, 2024, and that Plaintiff had not engaged in substantial gainful activity since January 31, 2020, her alleged onset date [TR 281]. At step two, the ALJ found Plaintiff had the following severe impairments: cardiovascular disease, lupus, rheumatoid arthritis, fibromyalgia, and disorders of the spine [TR 282]. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526) [TR 282]. At step four, the ALJ determined Plaintiff had the following residual functional capacity:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except handling and fingering limited to occasional and when working indoors the claimant should be in a climate controlled environment.

[TR 284]. Continuing the step four analysis, the ALJ found Plaintiff was not capable of performing past relevant work [TR 287]. However, the ALJ found that claimant "acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant

---

[1] Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of her disability claim is not disabled. *Id.* § 404.1520(b). Second, the claimant is not disabled if her alleged impairment is not severe, without consideration of her residual functional capacity, age, education, or work experience. *Id.* § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if her impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if she can perform her past work based on her residual functional capacity. *Id.* § 404.1520(e). Finally, a claimant who cannot return to her past work is not disabled if she has the residual functional capacity to engage in work available in the national economy. *Id.* § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability, and at the last step, the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

numbers in the national economy" [TR 287]. Relevant to this appeal, the ALJ provided the following explanation in the Decision:

> The vocational expert was asked if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and residual functional capacity as the claimant, and which require skills acquired in the claimant's past relevant work but no additional skills. The vocational expert responded and testified that representative occupations such an individual could perform include the following:
>
> 1. Director nurses registry director (DOT 187.167-034, sedentary, SVP 6). There are approximately 20,000 of these jobs in the national economy.
> 2. Nurse consultant (DOT 075.127-014, sedentary, SVP 7). There are approximately 74,000 of these jobs in the national economy.
> 3. Directory outpatient services (DOT 187.117-058, sedentary, SVP 8). There are approximately 43,000 of these jobs in the national economy.
>
> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.
>
> Based on the testimony of the vocational expert, I conclude that the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. The vocational expert testified the claimant's previous work is so similar to the jobs recited above that the claimant would need to make very little, if a y, vocational adjustment in terms of tools, work processes, work settings, or the industry.

[TR 288]. Thus, the ALJ concluded Plaintiff was not under a disability as defined in the Social Security Act, at any time from January 31, 2020, the alleged onset date, through June 18, 2021, the date of this decision [TR 289].

On July 26, 2021, Plaintiff requested review of the ALJ's decision by the Appeals Council [TR 436-438]. The Appeals Council denied Plaintiff's request on December 8, 2021, making the decision of the ALJ the final decision of the Commissioner [TR 1-4]. On December 14, 2021, Plaintiff filed the instant suit [Dkt. 1]. Plaintiff filed her Opening Brief on March 20, 2022 [Dkt. 15], and the Commissioner filed its Brief on May 16, 2022 [Dkt. 17].

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). Additionally, any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

Plaintiff urges remand is appropriate in this cause and presents four (4) issues for review: (1) whether remand is required where the ALJ posed a defective hypothetical to the VE; (2) whether remand is required because the ALJ failed to account for Plaintiff's age when determining transferability of skills; (3) whether remand is required because the ALJ failed to identify jobs in significant numbers in the national economy; and (4) whether the ALJ erred in rejecting medical opinion evidence [Dkt. 15 at 5]. The first three issues deal exclusively with the

ALJ's Step Five analysis. Because the Court finds remand is appropriate having considered the Step Five issues, the Court does not address the remaining argument raised by Plaintiff.

## *Step Five Error*

### *ALJ's Hypothetical to VE*

Plaintiff contends that the ALJ erred at Step Five by posing a hypothetical to the VE that did not precisely match his RFC determination—specifically, the ALJ limited Plaintiff to sedentary work with occasional handling and fingering but the hypothetical posed to the VE included frequent handling and fingering [Dkt. 15 at 9-10]. The Commissioner counters that the ALJ properly accounted for a limitation to occasional handling and fingering and, regardless, any error on this point does not require remand [Dkt. 17 at 7].

*Bowling v. Shalala* articulates the Fifth Circuit standard for evaluating whether a hypothetical question is defective and, if so, constitutes reversible error. 36 F.3d 431, 436 (5th Cir.1994). Notably, the hypothetical question that the ALJ poses to a VE need only incorporate the disabilities that the ALJ recognizes. "If the ALJ's hypothetical example omits a recognized limitation but 'the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question),' there is no reversible error." *Gardner v. Massanari,* 264 F.3d 1140 (5th Cir. 2001) (citing *Bowling,* 36 F.3d at 435) (internal quotations omitted). However, "failure to point out the problems in a defective hypothetical [does not] automatically salvage[] that hypothetical as a proper basis for a determination of non-disability." *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001).

As set forth *supra*, at Hearing, the ALJ directed the VE to assume a hypothetical individual that "can't be exposed to heat or cold or dampness, and the best way to do that would be limit it to indoor climate-controlled environment and also limit handling and fingering to frequent, and if there are jobs with occasional, give me those first" [TR 317]. Plaintiff argues that while the ALJ's hypothetical question to the VE reasonably incorporated all of Plaintiff's recognized disabilities, it left open the possibility of including jobs that are beyond Plaintiff's RFC. In other words, it was ambiguous as to limitations and potentially assumed that Plaintiff could perform greater or more demanding activity than her RFC finding provided—frequent handling and fingering versus occasional handling and fingering.

The hearing testimony reflects that the first job identified by the VE, Director, Nurses Registry, was limited to occasional handling and fingering [TR 317 ("[a]nd would that be occasional handling and fingering or frequent?...Yes, sir, occasional.")]. However, the VE failed to provide any testimony as to whether occasional or frequent handling was required for the remaining two works. The Dictionary of Occupational Titles reflects that the position of Director, Outpatient Services, DOT Code 187.117-058, requires handling and fingering frequently from 1/3 to 2/3 of the time. DICOT 1187.117-058, 1991 WL 671357 (Fourth Ed., Revised 1991). And, the Nurse, Consultant, DOT Code 075.127-014, requires handling and fingering occasionally up to 1/3 of the time. DICOT 075.127-014, 1991 WL 646741 (Fourth Ed., Revised 1991). The ALJ relied upon each of the three jobs supplied by the VE in reaching his decision. Had the ALJ been more specific, the list of jobs provided by the VE would very likely have been different, and would have excluded the Director, Outpatient Services job. *Orosco v. Comm'r*, 171 F. Supp. 3d 539, 543-44 (E.D. Tex. 2016). "[An] ALJ's step 5 finding regarding other jobs that Plaintiff could perform, premised upon an RFC that is different from the RFC posed to the VE at the hearing, is

not supported by substantial evidence of record." *Hunt v. Saul*, No. 20-348, 2021 WL 3361689, at *8 (M.D. La. July 16, 2021), *report and recommendation*, No. 20-348, 2021 WL 3356323 (M.D. La. Aug. 2, 2021).

### *Transferability of Skills*

Against this backdrop, the Court turns to Plaintiff's second point of error that the ALJ failed to establish Plaintiff has skills that are transferable without significant vocational adjustment [Dkt. 15 at 10-11]. More specifically, Plaintiff argues that the ALJ failed to factor in Plaintiff's "advanced age" and erroneously concluded that the position of Nurse, Consultant would only require a minimal adjustment [Dkt. 15 at 11]. The Commissioner seemingly concedes that the ALJ committed error by incorporating this position into his decision, but advances that this error was harmless [Dkt. 17 at 6-7].

All Parties agree that Plaintiff falls into the advanced age category. If a claimant is fifty-five or older, he or she is considered to be of "advanced age" and special rules apply. 20 C.F.R. § 404.1563(e). A claimant who is of advanced age and limited to sedentary work only has transferable skills if the "sedentary work is so similar to [her] previous work that [she] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." 20 C.F.R. § 404.1568(d)(4); SSR 82-41, 1982 WL 31389, at *5. In other words, "the semiskilled or skilled job duties of [the claimant's] past work must be so closely related to other jobs which they can perform that they could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation." SSR 82-41, 1982 WL 31389, at *5. Both Parties also seemingly agree that, though not worded clearly, the VE testified at Hearing the Nurse, Consultant position would require more than a minimal adjustment [Dkts. 15 at 11; 17 at 7]. By way of reminder, the VE's testimony, in relevant part is:

> Attorney: So, I -- I -- well, first off, these skills that you've testified to, could she use them with no more than any, you know, minimal adjustment? She's over age 55.
>
> VE: Well, I would -- let's -- let's take those individually, because even though they're in the -- in the healthcare industry, for them, it's the more, you know, work field than industry. I would say there would be probably more than minimal adjustment required -- vocational adjustment required to the    for the nurse consultant. For the other two, I -- and that's a 7. I -- I would say for the director, outpatient services, since that's a 8, I – I—I think that would still remain, and then, the nurses registry director – would remain. Does that make sense?

[TR 319-320]. Such testimony is inconsistent with the ALJ's decision, which provides:

> Based on the testimony of the vocational expert, I conclude that the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. The vocational expert testified the claimant's previous work is so similar to the jobs recited above that the claimant would need to make very little, if a y, vocational adjustment in terms of tools, work processes, work settings, or the industry.

[TR 288]. If the ALJ had properly relied on the VE's testimony, it is very well possible he would have reached a different conclusion; more specifically, the position of Nurse, Consultant would likely not have been included in his decision. *See Prudhomme v. Colvin*, 605 F. App'x 250, 254 (5th Cir. 2015) (finding reversible error where substantial evidence did not support the ALJ's decision as to transferability of skills); *see also Judith L. W. v. Saul*, No. 3:19-cv-02806, 2020 WL 7040904, at *3 (N.D. Tex. Dec. 1, 2020) (finding substantial evidence supported ALJ's finding of transferability of skills where VE testimony supported the decision), *report and recommendation adopted*, No. 3:19-cv-02806, 2020 WL 7399051, (N.D. Tex. Dec. 17, 2020); *Gallegos v. Berryhill*, No. H-17-201, 2018 WL 1069585, at *7 (S.D. Tex. Jan. 22, 2018), *report and recommendation adopted*, No. H-17-201, 2018 WL 1035717 (S.D. Tex. Feb. 23, 2018).

*Significant Number of Jobs in the National Economy*

Plaintiff finally argues that because the positions of Nurse, Consultant and Director, Outpatient Services should not have been considered, the remaining position—Director, Nurses Registry Director, does not provide a significant number of jobs in the national economy [Dkt. 15 at 11]. The ALJ's Decision states that "there are approximately 20,000 of these jobs in the national economy" [TR 288]. In response, the Commissioner argues that the ALJ incorrectly stated there are only 20,000 of these jobs, given that at Hearing, the VE testified 30,000 such jobs existed; and, that district courts in this circuit have found that 30,000 jobs constitute a "significant number" [Dkt. 17 at 8-9].

"Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [claimants] are able to meet with [their] physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b). To establish that work exists for a claimant in significant numbers, the ALJ may rely on the testimony of a VE in response to hypothetical questions or other similar evidence, or on the Medical-Vocational Guidelines promulgated to guide this determination, often referred to as "the Grids." *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000). "The Fifth Circuit has not, in a published opinion, laid out an express number or test to determine a "significant number." *Morgan v. Colvin*, No. 3:15-CV-2589-L (BH), 2016 WL 5369495, at *10 (N.D. Tex. Sept. 6, 2016), *report and recommendation adopted*, No. 3:15-CV2589-L, 2016 WL 5341305 (N.D. Tex. Sept. 23, 2016).

Here, it is undisputed that the ALJ considered all three identified positions in determining that there were a significant number of jobs in the national economy; two of these positions likely should not have been included. Although the Commissioner contends that the number of jobs available for Directory Nurse Registry Director alone may constitute a significant number of jobs,

the ALJ's consideration of that job on its own may have resulted in a determination that there were not a significant number of jobs Plaintiff could perform. Thus, "Plaintiff was prejudiced when the ALJ included those jobs in his determination that there were a substantial number of jobs available to Plaintiff because excluding them might have led to a different decision." *Nash v. Berryhill*, No. 3:17-cv-00562, 2018 WL 1940315, at *14 (N.D. Tex. Apr. 3, 2018). "As such, the Court concludes that the ALJ's error was not harmless and warrants remand. *Id.*; *Calbert v. Berryhill*, No. 3:17-cv-3428, 2019 WL 1261177, at *11 (N.D. Tex. Feb. 25, 2019) (remanding where the ALJ could have reached a different conclusion in finding there were significant number of jobs in the national economy where there was a lack of substantial evidence that plaintiff could perform all of the jobs relied on by the ALJ), *report and recommendation adopted*, No. 3:17-cv-3428, 2019 WL 1255017 (N.D. Tex. Mar. 19, 2019).

## CONCLUSION

For the foregoing reasons, the Court finds the Commissioner's decision should be **REMANDED** to the Commissioner of Social Security for further proceedings consistent with this opinion.[2]

**SIGNED this 27th day of February, 2023.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE

---

[2] By remanding this case for further administrative proceedings, the Court does not suggest in any way that Plaintiff is or should be found disabled.